COMMONWEALTH of Pennsylvania,
Appellee

v.

Thomas Edward SPERBER,
Jr., Appellant

No. 707 WDA 2016

Superior Court of Pennsylvania.

Argued July 18, 2017
Filed December 12, 2017
Reargument Denied February 20, 2018

Brandon P. Ging, Public Defender, Pittsburgh, for appellant.

Gregory J. Simatic, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: BOWES, J., LAZARUS, J., and OTT, J.

OPINION BY LAZARUS, J.:

Thomas Edward Sperber, Jr., appeals from the judgment of sentence entered in the Court of Common Pleas of Allegheny County. Sperber was arrested and charged in March 2015 with eleven counts [1] of possession of child pornography [2] and criminal use of a communication facility. [3] The charges were filed after Sperber's parole officer, from a prior case, found images of minor females on his smartphone. After careful review, we affirm.

In an unrelated case, Sperber pled guilty in September 2001 ("prior case"/"prior sex offenses") to one count each of sexual abuse of children (relating to child pornography), criminal use of a communication facility, indecent exposure; two counts each of rape, sexual assault and indecent assault; and three counts each of involuntary deviate sexual intercourse (victim less than 16) and statutory sexual assault. On January 17, 2002, the court sentenced Sperber to an aggregate term of eight to twenty years' imprisonment; he was also ordered to comply with the lifetime registration requirements pursuant to Megan's Law II, 42 Pa.C.S. §§ 9795.1(b) and 9795.2. In February 2014, the court paroled Sperber on the prior sex offenses; he was paroled to his approved home where he was supervised by Pennsylvania State Parole Board Agent Thomas Wolfe. [4]

On August 21, 2015, Sperber filed a motion to suppress in the instant case claiming that his initial detention and the subsequent search of his person, vehicle, and smart phone were illegal because the parole agents did not have reasonable suspicion to believe that they would discover evidence of a parole violation in his prior case. Sperber also argued that he never consented to the search of his vehicle or smart phone and that any alleged consent was the product of an unlawful investigatory detention.

At a suppression hearing, held on September 1, 2015, Agent Wolfe testified that he had been supervising sex offenders exclusively for seven years and that as conditions of his parole, Sperber expressly consented to warrantless searches of his person, property, and residence and acknowledged that any items in his posses-

---

1. Counts 1–8 were graded as second-degree felonies and counts 9–11 were graded as third-degree felonies.

2. 18 Pa.C.S. § 6312(d).

3. 18 Pa.C.S. § 7512(a).

4. Sperber filed a direct appeal from his judgment of sentence in the prior case, claiming that the trial court erred in applying Megan's Law II where the punishment violated the ex post facto clause of the United States Constitution. *See Commonwealth v. Sperber*, 813 A.2d 909 (unpublished memorandum decision) (Pa. Super. filed September 11, 2002). Our Court affirmed his judgment of sentence, relying on *Commonwealth v. Fleming*, 801 A.2d 1234 (Pa. Super. 2002), which held that the registration requirement was not punishment, and, therefore, could not constitute a violation of the ex post facto clause of the United States Constitution. However, the Supreme Court vacated and remanded the case for resentencing based upon the holding of *Commonwealth v. Williams*, 574 Pa. 487, 832 A.2d 962 (2003), which determined that the provision of Megan's Law II which allowed the Commonwealth to incarcerate a sexually violent predator who did not comply with the notification, registration, and counseling provisions was unconstitutional because it was manifestly in excess of what was needed to ensure compliance. *Commonwealth v. Sperber*, 578 Pa. 39, 849 A.2d 1134 (unpublished decision) (2004).

sion that constituted a violation of his parole would be subject to seizure and used as evidence. N.T. Suppression Hearing, 9/1/15, at 3–4, 6. As a special condition of his parole in the prior case, Sperber expressly consented to parole staff having access to any computer or multimedia device in his possession, including cell phones, and also permitted parole supervision staff to search all programs and records maintained on any such devices. *Id.* at 7. Finally, as another condition of his probation, Sperber was prohibited from possessing a cell phone with internet capabilities.[5] *Id.* at 8.

Wolfe testified that on August 27, 2014, his office received a call from the Pennsylvania State Police Megan's Law Division (the Division) that it had received an anonymous tip that Sperber had access to social networking sites on a smart phone. The Division gave Wolfe two associated internet user names connected to the social media sites. *Id.* at 9. Wolfe tried to ascertain the identity of the user names on several sites, but was unsuccessful because they were password-encrypted. Prior to receiving the anonymous tip, several sex offenders, who were in Sperber's sex offender treatment group and were being supervised by Agent Wolfe, had also informed Wolfe that Sperber possessed a smart phone. *Id.*

On the same day Wolfe received the anonymous tip from the Division, Sperber reported to the Pennsylvania State Parole Pittsburgh Office for a regularly scheduled visit with Wolfe. When he arrived, Wolfe questioned Sperber about the anonymous tip and reports about him possessing a smart phone and asked him to empty his pockets. Sperber did so, producing car keys and a regular (non-smart) cell phone. Wolfe asked Sperber if he was hiding anything in his car, to which he replied "no." *Id.* at 10. Wolfe then asked Sperber for permission to search his car, to which Sperber agreed. *Id.* Two other parole agents opened Sperber's car and confiscated an Android cell phone with internet capabilities. *Id.* at 11. Sperber's cell phone was password-protected; Sperber gave Wolfe the password at his request. *Id.* at 12–13. Wolfe entered the password which unlocked the phone, revealing images of young minor females. At that point, Wolfe filed a confiscation report and turned the phone over to the Attorney General's Office for further investigation. *Id.* at 13.[6]

After the parties filed briefs on the matter, the trial court denied Sperber's suppression motion on October 19, 2015. Sperber proceeded to a non-jury trial before the Honorable Donna Jo McDaniel. Following trial, Sperber was found guilty of counts 2–12; count 1 was withdrawn. On April 14, 2016, the court sentenced Sperber on the pornography charges to five consecutive 5–10 year terms of incarceration, for an aggregate sentence of 25–50 years' imprisonment. No further penalty was imposed on the communication charge. Sperber filed no post-sentence motions.

Sperber filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He presents the following issue for our consideration:

> Did the trial court err by denying Mr. Sperber's motion to suppress evidence where the initial detention of Mr. Sper-

---

5. It does not appear, however, that Sperber was precluded from accessing the internet on a computer; thus, the condition was not a complete ban on internet access. *See infra* n.8.

6. In the prior case, Sperber was recommitted to SCI Pittsburgh for "technical violations" for possessing a cellphone with internet capabilities. Motion to Suppress, 8/21/16, at ¶ h.

ber along with the subsequent searches of his vehicle and smart phone, because they were not supported by reasonable suspicion, were illegal and conducted in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article One, Section Eight of the Pennsylvania Constitution?

Appellant's Brief, at 5.

In an appeal from the denial of a motion to suppress, an appellate court's role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making that determination, the appellate court may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse only if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Griffin*, 24 A.3d 1037, 1041 (Pa. Super. 2011) (quotation omitted).

■ It is well established that individuals under parole supervision have limited search and seizure rights. *Commonwealth v. Chambers*, 55 A.3d 1208 (Pa. Super. 2012). "In exchange for early release from prison, the parolee cedes away certain constitutional protections enjoyed by the populace in general." *Commonwealth v. Edwards*, 874 A.2d 1192, 1197 (Pa. Super. 2005) (citation omitted). Parolees agree to warrantless searches based only on reasonable suspicion. *Commonwealth v. Colon*, 31 A.3d 309 (Pa. Super. 2011). State parole agents are statutorily permitted to perform a personal search of an offender or his or her personal property if there is reasonable suspicion to believe "that the offender possesses contraband or other evidence of violations of conditions of supervision" or "that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision." 61 Pa.C.S. § 6153(d)(1)(i), (2).

■ While the determination of whether reasonable suspicion exists is to be considered in light of the totality of the circumstances, *Commonwealth v. Shabazz*, 18 A.3d 1217 (Pa. Super. 2011), under section 6153(d)(6),

[t]he existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:

(i) The observations of agents.

(ii) Information provided by others.

(iii) The activities of the offender.

(iv) Information provided by the offender.

(v) The experience of agents with the offender.

(vi) The experience of agents in similar circumstances.

(vii) The prior criminal and supervisory history of the offender.

(viii) The need to verify compliance with the conditions of supervision.

61 Pa.C.S. § 6153(d)(6).

■ We find that, in light of the totality of the circumstances, the parole agents had reasonable suspicion to conduct the warrantless search of Sperber's person, car and smart phone. First, the police corroborated the anonymous tip with reports from several other parolees who were members of Sperber's sex offender group whom Agent Wolfe also supervised. These group members had informed Wolfe

"through the months," prior to the tip, that Sperber possessed a smart phone. N.T Suppression Hearing, 9/1/15, at 9–10. In addition, Wolfe was familiar with Sperber's past history of viewing child pornography. Next, the scope of the search was within Wolfe's duty as a parole officer where conditions of Sperber's parole provided for warrantless searches of his person and property, and permitted parole agents access to any cell phone or multimedia device he possessed. Finally, Wolfe testified that Sperber expressly consented to the search of his person and car.[7] Accordingly, we

find no merit to Sperber's suppression claim on appeal; the trial court's factual findings are supported in the record and its legal conclusions are correct. *Griffin, supra.*[8]

Judgment of sentence affirmed.

OTT, J., joins the opinion.

BOWES, J., files a concurring opinion.

### CONCURRING OPINION BY BOWES, J.:

I concur. However, I would affirm on the basis that Appellant consented to the

---

7. We also find that there is no evidence in the record to suggest that Sperber was coerced to agree to the searches or that the parole visitation rose to the level of a custodial interrogation requiring more constitutional protections. *Cf. Commonwealth v. Cooley*, 632 Pa. 119, 118 A.3d 370 (2015) (where parolee was restrained upon arrival at parole office, was accused of crimes for which he was not on parole, and no "interview" or dialogue related to conditions of parole or parole violations took place, parolee subject to custodial interrogation; failure to administer *Miranda* warnings violated Fifth Amendment rights resulting in vacation of conviction).

8. We note that recently, in *Packingham v. North Carolina*, —— U.S. ——, 137 S.Ct. 1730, 198 L.Ed.2d 273 (2017), the United States Supreme Court deemed unconstitutional a North Carolina statute that makes it a felony for a registered sex offender to gain access to a number of websites, including commonplace social media websites, "where the sex offender knows that the site permits minor children to become members or to create or maintain personal Web pages." *Id.* at 1733. Recognizing that it was a case of first impression about "the relationship between the First Amendment and the modern Internet," the Court concluded that "[b]y prohibiting sex offenders from using those websites, North Carolina with one broad stroke bars access to what for many are the principal sources for knowing current events, checking ads for employment, speaking and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge." *Id.* at 1737.

While Packingham may appear to be relevant to the case at hand, we note that the *Packingham* Court stated, "this opinion should not be interpreted as barring a State from enacting more specific laws than the one at issue." *Id.* However, because the judgment of sentence from which Sperber appeals is not the one that imposed the parole condition, it is not an appropriate challenge in this appeal. Rather, because the condition is attached to his 2002 sentence, it would be properly raised in a Post–Conviction Relief Act (PCRA) petition, filed in that case, raising the proper PCRA timeliness exception. Finally, even if we were to find the claim relevant to this appeal, it would be waived. "[I]it is well-settled that in order for a new law to apply retroactively to a case pending on direct appeal, the issue had to be preserved in the trial court and at all subsequent stages of the adjudication up to and including the direct appeal." *Commonwealth v. Smith*, 609 Pa. 605, 17 A.3d 873, 893–94 (2011). Here, Sperber never raised this issue at sentencing, in a post-sentence motion or even in this direct appeal. Additionally, the issue involves the discretionary aspect of Sperber's sentence which he failed to preserve at sentencing or in a post-sentence motion. *See Commonwealth v. Yockey*, 158 A.3d 1246 (Pa. Super. 2017) (where defendant convicted of corruption of minors and indecent assault, claim that sentence prohibiting defendant from having access to internet was illegal was waived where defendant did not challenge it at sentencing or in post-sentence motion); *see also* Pa. R.Crim.P. 720; Pa.R.A.P. 302(a).

search of his vehicle, which resulted in the seizure of a smartphone. Next, I would hold that the warrantless search of Appellant's phone was lawful. Finally, I would deem waived any claim respecting the voluntariness of the consent.

I begin with Appellant's suppression motion, which asserted that the "search of [Appellant] and his vehicle was unlawful because an uncorroborated anonymous tip cannot, on its own, form the basis for reasonable suspicion." Motion to Suppress, 8/21/15; at unnumbered 3. Appellant alleged that "The warrantless seizure and search of [Appellant] and his vehicle was unlawful because it was unsupported by reasonable suspicion." *Id.* at unnumbered 4. The motion additionally argued that the subsequent search, arrest, and search warrant for the phone were fruits of the tainted search and seizure. The body of the motion cited *Commonwealth v. Colon*, 31 A.3d 309 (Pa.Super. 2011); *Common-*

*wealth v. Kue*, 692 A.2d 1076 (Pa. 1997) (OAJC); and *Commonwealth v. Wimbush*, 750 A.2d 807 (Pa. 2000) in support. Appellant did not claim that his consent was involuntary.

Those cases and their attendant principles are inapplicable to the matter at hand with respect to the initial search of Appellant's vehicle and consequent seizure of Appellant's smartphone. *Colon* involved the search of a parolee that was not the product of consent. *Kue* and *Wimbush* both involved whether an anonymous tip was sufficiently reliable to support an investigative detention. Therefore, those cases would be relevant to our analysis only if Agent Wolfe had engaged in a nonconsensual warrantless search of Appellant's vehicle or his person, based on the anonymous tips plus any other factor or information.[1] At that juncture, we would assess, as the Majority does, whether the vehicular search was justified.[2] However,

---

1. Appellant presumably proceeded with suppression on that ground due to the fact that the affidavit of probable cause does not discuss the circumstances of the search. It reads, in pertinent part:

   On August 27, 2014, Agent Wolfe was made aware of an anonymous communication received by Pennsylvania State Police Megan's Law concerning the Actor. The anonymous source claimed that the Actor had Internet access and multiple social media accounts.

   On this same date (8/27/2014), the Actor reported to the PA State Parole's Pittsburgh district office for routine reporting. During a search of the Actor's vehicle, an LG MS232 Optimus L70 Titan cellular phone (hereinafter referred to as "the Actor's phone") was confiscated. Agent Wolfe noted that several social networking applications appeared to be installed on the Actor's phone. Please note that based on state supervision, the Actor did not have permission to possess a phone with Internet capabilities.

   Affidavit of Probable Cause at 3.

2. My distinguished colleagues find that the anonymous tip was sufficiently reliable to

support the vehicular search. I am not convinced that their analysis is correct. First, the record does not indicate whether the multiple tips came from different sources, nor does it indicate whether such tips were consistently delivered over a particular period of time. In any event, accepting *arguendo* that the anonymous tips were reliable, the tips revealed only that Appellant had a smartphone, not that the vehicle he drove to the meeting contained said smartphone. Perhaps that assumption was reasonable; perhaps not. However, when Appellant disclosed the contents of his pockets, Appellant possessed a basic cellphone that did not appear to possess Internet capabilities. Therefore, the anonymous tipsters' information was arguably discredited, not corroborated.

Since the Majority fails to connect the reliability of the tip regarding possession of a phone with the search of the car, the Majority implies that the tips would permit Agent Wolfe to search Appellant's home, person, car, or any other possession in an effort to find the smartphone. Since parolees have diminished Fourth Amendment rights, it may be that a search of the vehicle Appel-

since the record supports a finding that the search of Appellant's vehicle, which resulted in the seizure of the smartphone, was consensual, I would uphold the vehicular search on that basis.

I recognize that the consensual search herein occurred during a scheduled, *i.e.* presumably mandatory, probation meeting. That fact does not automatically render voluntary consent impossible. *Commonwealth v. Strickler*, 563 Pa. 47, 757 A.2d 884 (2000), a consensual search case, demonstrates the applicable principles. Therein, a police officer encountered a vehicle parked on the side of the road. He approached the occupants, who stated they had stopped to urinate. The officer asked to see their licenses, conducted a license check, advised them not to urinate on someone else's property, and thanked Strickler, the driver, for his cooperation. *Id.* at 886. The officer took a few steps toward his vehicle, but then turned around and asked Strickler "if he wouldn't mind if I took a look through [the] car." *Id.* at 887. Strickler hesitated but agreed, and the search yielded drug paraphernalia. The question was whether Strickler validly consented to the search following the investigative detention. *Id.* at 888. Significantly, the opinion concluded with an observation regarding the determination of whether a seizure had occurred versus whether consent was voluntary.

Since both the tests for voluntariness and for a seizure centrally entail an examination of the objective circumstances surrounding the police/citizen encounter to determine whether there was a show of authority that would impact upon a reasonable citizen-subject's perspective, there is a substantial, necessary overlap in the analyses. The reasons supporting the conclusion that Strickler was not seized at the time that he lent his consent to the vehicle search therefore also militate strongly in favor of a determination that his consent was voluntary.

*Id.* at 901–02.

Herein, Appellant alleges that "the interaction between [Appellant] and Wolfe, his parole supervisor, is properly characterized as an investigative detention." Appellant's brief at 19. Appellant then asserts that this investigative detention was not supported by the anonymous tips. As stated in *Strickler*, whether Appellant was seized overlaps to a great extent with the question of whether his consent was voluntary. The record is unclear as to the circumstances of Appellant's interactions with Agent Wolfe, and we therefore lack the basis to say whether Appellant's consent was procured during a seizure. The lack of an evidentiary record on these issues is chargeable to Appellant, as the issue of involuntary consent was raised for the first time in his post-hearing brief as an alternative argument.

In the alternative, should it be determined that Mr. Sperber consented to the search of his person and property, that consent was invalid. The totality of the circumstances indicate that the consent was lacking the crucial element of voluntariness. The consent was invalid and the warrantless search of Mr. Sperber's vehicle remains unlawful.

Post-Hearing Brief, 10/1/15, at 4. Since this claim was not pursued in the written motion, nor raised during the suppression hearing, I would deem the argument waived. *See* Pa.R.Crim.P. 581(D) (motion shall state grounds for suppression); *Com-*

lant used was reasonable. However, given the utter lack of information regarding the anonymous information, to say nothing of how to apply anonymous tipster principles

in the context of a parolee search, we need go no further than affirming the search based on consent.

*monwealth v. Dixon*, 997 A.2d 368, 376 (Pa.Super. 2010) (*en banc*) (Commonwealth not required to present testimony regarding how gun was recovered, since appellant only challenged the legality of the seizure, not the manner of seizure).

Regarding waiver, I note that we recently issued an opinion in *Commonwealth v. Carper*, 172 A.3d 613 (Pa.Super. 2017), holding that a defendant validly preserved a suppression issue based on an argument raised in a post-hearing brief. The defendant therein was charged with DUI crimes and sought suppression of his blood results based on *Birchfield v. North Dakota*, —— U.S. ——, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016), which was decided following his arrest. In the defendant's post-hearing brief, he argued for the first time that, pursuant to Article I, Section 8 of the Pennsylvania Constitution, the warrantless blood draw was not saved by good faith reliance upon the law that existed at the time of the draw. We held that the failure to raise that point of law in the written motion or at the hearing did not result in waiver, observing:

> The requirement that a defendant raise the grounds for suppression in his or her suppression motion ensures that the Commonwealth is put on notice of what evidence it must produce at the suppression hearing in order to satisfy its burden of proving that the evidence was legally obtained. *Cf. Commonwealth v. McDonald*, 881 A.2d 858, 860–861 (Pa. Super. 2005) (internal quotation marks and citation omitted) ("[W]hen a motion to suppress is not specific in asserting the evidence believed to have been unlawfully obtained and/or the basis for the unlawfulness, the defendant cannot complain if the Commonwealth fails to

address the legality of the evidence the defendant wishes to contest."). In this case, the Commonwealth extensively addressed the Article I, Section 8 issue in its brief filed prior to the suppression hearing. It also addressed the Article I, Section 8 issue in its argument prior to the beginning of the suppression hearing. At the conclusion of the suppression hearing, the Commonwealth stated that it called a witness in order to prove that Appellee's consent was valid notwithstanding the partially inaccurate DL–26 warnings. This is the only additional evidence that the Commonwealth needed to offer because of Appellee's Article I, Section 8 claim. Finally, the Commonwealth did not object to Appellee raising a Article I, Section 8 claim before the trial court. Thus, the Commonwealth was not unfairly prejudiced by Appellee's delay in raising his Article I, Section 8 claim.

*Carper*, 172 A.3d at 619-20, 2017 WL 4562730 at *4.

*Carper* did not deem the issue waived since the necessary facts were developed at the hearing. The same is not true here, as the evidentiary record does not fully speak to the circumstances of Appellant's encounter with Agent Wolfe. The Commonwealth cannot be blamed for failing to anticipate and rebut Appellant's alternative argument that consent was involuntary. Therefore, Appellant's post-hearing attempt to raise the issue of voluntariness did not preserve the issue for our review.

Next, I briefly address the separate search of the phone. Appellant argues that he did not consent to this separate search; instead, he simply disclosed the password needed to access the phone at Agent Wolfe's request.[3] I agree that the record

---

3. Appellant did not allege that the disclosure of the password was compelled or otherwise unlawfully obtained.

does not support a finding that Appellant consented to the search of his phone. However, at this point in the interaction, the anonymous tips were corroborated through discovery of the phone, and the possession of the smartphone in itself was a parole violation.[4] I would therefore hold that the limited warrantless search of the phone was justified due to corroboration of the tip, Appellant's prior history, and the need to ensure compliance with parole conditions.

Finally, I address *Packingham v. North Carolina*, —— U.S. ——, 137 S.Ct. 1730, 198 L.Ed.2d 273 (2017), wherein the United States Supreme Court held that a North Carolina statute prohibiting sex offenders from accessing social networking websites was unconstitutional. *Packingham* involved a First Amendment challenge to a criminal statute that applied to all convicted sex offenders, regardless of whether they were still serving an actual sentence. Language in Packingham suggests that an automatic flat prohibition on internet access may be unduly restrictive of a sex offender's First Amendment rights, and, in turn, arguably unlawful as-applied to Appellant. However, at least one court has suggested that Packingham would not prohibit a supervisory condition. *See United States v. Rock*, 863 F.3d 827 (D.C. Cir. 2017) (declining to find plain error in condition barring sex offender from possessing or using any online service without prior approval; "Rock's condition is imposed as part of his supervised-release sentence, and is not a post-custodial restriction of the sort imposed [in Packingham].").

Additionally, Packingham did not speak to whether more specifically tailored re-quirements would be permissible in general, and certainly did not address whether such restrictions could be justified based on the specific circumstances of individual sex offenders. Indeed, Justice Alito's concurring opinion, joined by Chief Justice Roberts and Justice Thomas, criticized the breadth of the Court's language.

While I thus agree with the Court that the particular law at issue in this case violates the First Amendment, I am troubled by the Court's loose rhetoric. After noting that "a street or a park is a quintessential forum for the exercise of First Amendment rights," the Court states that "cyberspace" and "social media in particular" are now "the most important places (in a spatial sense) for the exchange of views." *Ante*, at 1735. The Court declines to explain what this means with respect to free speech law, and the Court holds no more than that the North Carolina law fails the test for content-neutral "time, place, and manner" restrictions. But if the entirety of the internet or even just "social media" sites are the 21st century equivalent of public streets and parks, then States may have little ability to restrict the sites that may be visited by even the most dangerous sex offenders. May a State preclude an adult previously convicted of molesting children from visiting a dating site for teenagers? Or a site where minors communicate with each other about personal problems? The Court should be more attentive to the implications of its rhetoric for, contrary to the Court's suggestion, there are important differences between cyberspace and the physical world.

---

4. Appellant's fruit of the poisonous tree argument hinges on our agreement that the earlier seizure of the phone was improper. Since I would hold that Appellant consented to the search which resulted in that discovery, I would find that neither the initial search of the phone nor the subsequent search warrant was tainted by any illegality.

*Id.* at 1743 (Alito, J., concurring). Therefore, I agree with the Majority that Packingham does not alter our analysis, and any issue regarding its application was not preserved for review.[5]

5. The Majority states that Appellant could challenge the lawfulness of his parole conditions in a PCRA petition filed at the underlying criminal docket. I would refrain from opining on whether the PCRA would or could provide relief pursuant to Packingham, especially insofar as Appellant would presumably be seeking relief from continued obligations due to a change in the law as opposed to challenging the conviction. *See Commonwealth v. Partee*, 86 A.3d 245 (Pa.Super. 2014) (motion to enforce plea agreement does not fall under PCRA).